UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM J. AUSTIN,<br><br>                    Petitioner,<br>  vs.<br><br>JAMES TILTON, Acting Director,<br><br>                    Respondent. | CASE NO. 05CV1303-LAB (CAB)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION; AND DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

**I.    Background**

      Petitioner, a prisoner proceeding *pro se*, filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 27, 2005. Petitioner is currently serving a 13-year sentence for assault in connection with a fight in a San Diego restaurant. Respondent then moved to dismiss the petition. Pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1, this matter was referred to Magistrate Judge Nita Stormes. On December 8, 2005, Judge Stormes issued her report and recommendations, recommending, among other things, that Respondent's motion to dismiss certain claims as unexhausted be denied. No objections were filed to this report and recommendation, which the Court adopted on January 23, 2006.

      Respondent then filed his answer, and Petitioner filed his traverse. Judge Stormes denied Petitioner's request for an evidentiary hearing and issued her report and recommendation (the "R&R") on June 22, 2007, recommending the petition be denied in full. Petitioner filed his objections (the

///

"Objections") to the R&R. Petitioner thereafter twice filed applications requesting leave to file a supplemental petition, both of which were denied.

A district judge "may accept, reject, or modify the recommended decision" on a dispositive matter prepared by a magistrate judge proceeding without the consent of the parties for all purposes. Fed. R. Civ. P. 72(b); *see* 28 U.S.C. §636(b)(1). "The court shall make a de novo determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. §636(b)(1). The "statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo <u>if objection is made</u>, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Petitioner does not object to any of the R&R's factual findings, which are therefore **ADOPTED**. Petitioner, however, objects to certain portions of the R&R's analysis and legal conclusions. The Court has reviewed all portions of the R&R not objected to and finds them to be correct.

## II.  Objections to the R&R, and Additional Requests

Petitioner makes three main objections. He attempts to show that: 1) the evidence at trial was insufficient to support his conviction, 2) the testimony of Detective Eric Stafford should not have been admitted, and 3) the R&R should not have determined that certain of his claims were procedurally defaulted. He also renews requests made earlier in the proceedings for appointment of counsel, and requests an evidentiary hearing and oral argument.

### A.  Sufficiency of the Evidence

Petitioner focuses most of his attention on his objection concerning the sufficiency of the evidence, which bears on his first claim for relief. Petitioner's main argument is set forth in his Objections at 1:24–26, where he asserts the Court must respect his "right to a fair trial with truth in evidence, free from lie[]s and false testimony." Petitioner argues certain witnesses committed perjury, and that the prosecution nevertheless presented their testimony. He points to a substantial portion of the R&R (R&R at 9:22–11:6) as explaining the unreliability of these witnesses.

The portion of the R&R Petitioner cites shows he is objecting to the testimony of David Ulloa, a waiter; Shannon Conley, a restaurant patron; Mallory Meyer, a disc jockey; and Guillermo Ybarra

and Jose Luis Manzo, security guards. The same portion of the R&R refers to alibi evidence Petitioner presented at trial to show he was at a practice for a hair show when the assault took place. Petitioner was identified at trial by a number of witnesses as being present in the restaurant and being involved in several altercations, one of which resulted in Ulloa suffering a compound fracture of his arm and being taken away in an ambulance and another of which resulted in a head wound to Manzo.

Petitioner argues that these four witnesses' in-court testimony and identification of Petitioner as the attacker are contradicted by their earlier statements. Ulloa, for example, just before being taken away in an ambulance, gave only a vague description of the man who broke his arm, saying he did not get a good look at the man. (R&R at 9:25–28.) Conley reportedly did not give a description of the attacker. (*Id.* at 10:3–4.) At the hospital, Manzo was not able to describe his attacker in any great detail and did not mention recognizing him. (*Id.* at 10:5–7.) Meyer told police he saw the fight but did not get a good look at anyone. (*Id.* at 10:24–28.) Officer Jason Aguilar's statement, which was admitted by stipulation, said Ybarra told him about the attack but did not describe the attacker. (*Id.* at 10:28–11:6.) Petitioner therefore argues these witnesses' later identifications of him as the attacker could not be credited.

The R&R has set forth the evidentiary standards and standards for review, which Petitioner does not challenge and which the Court finds correct. (R&R at 16:20–17:26, 18:10–20). The R&R also explains why the witnesses' in-court identification was sufficiently reliable. For example, Manzo testified he was under anesthesia when he was interviewed at the hospital and could not remember giving a description to police. (*See id.* at 20:17–19.) Ulloa, similarly, was suffering extreme pain from a compound fracture and waiting to be taken to the hospital in an ambulance at the time he gave his initial statement to police. (*Id.* at 9:24–28.) The officer who questioned Conley merely testified he did not remember her giving a description of the attacker or saying she had seen him before; he was not able to say with certainty that she did not do so. (*Id.* at 20:21–23.) Conley, by contrast, testified she described the attacker, and "might have" said she had seen him at the bar before. (*Id.* at 20:19–21.)

Ybarra testified at trial and said he gave a description of the men involved in the fight. (R&R at 21:1–3.) He testified he recognized the attacker from a previous altercation at the restaurant. (*Id.*) While the parties stipulated Officer Aguilar would have testified Ybarra gave no such description to

him, Ybarra spoke to two officers the night of the incident and could not remember which officer he gave the description to. (*Id.* at 21:5–8.)

The incident occurred on June 13, 2001, a Wednesday, at around 11:40 p.m. in a Mexican restaurant located in the Mission Valley area of San Diego. Petitioner's alibi evidence was offered to show he was at a practice for a hair show in the Del Cerro area of San Diego. Petitioner was present for practices on June 13 and 14, which lasted until 11:30 or midnight, although he left practice early on the 14th. One of the witnesses initially thought Petitioner left early on Wednesday, June 13, but changed her statement after speaking with her sister and two others. (R&R at 11:12–15.)

While the evidence is open to more than one interpretation, it is the jury's province to determine the credibility of witnesses, to resolve evidentiary conflicts, and to draw reasonable inferences from the evidence. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Because Petitioner has already been convicted, the Court views the evidence "in the light most favorable to the prosecution." *Id.*

While the jury might have accepted Petitioner's alibi evidence and rejected prosecution witnesses' testimony as unreliable, they were not required to do so. The testimony of a number of eyewitnesses, some of whom said they had seen Petitioner at the restaurant before, was sufficient to identify him as the attacker. The jury need not have accepted the testimony of Petitioner's two alibi witnesses, one of whom was a good friend of Petitioner and the other of whom was initially unsure of the date Petitioner left practice early. Even if Petitioner had presented more alibi witnesses, as he wished to do (R&R at 41:9–11), the jury was not bound to accept their testimony as to which day Petitioner left practice early and exactly when Petitioner left the practice on June 13.

While he addressed it at earlier stages, Petitioner has not objected to the R&R's discussion of the testimony of Manzo; Jennifer Brown, a waitress; or Raul Mondaca, the manager, each of whom identified Petitioner in court as the attacker. (*See* R&R at 6:21–24; 7:26–28, 20:13–14.) Therefore, even if the Court were to sustain Petitioner's first objection, these witnesses' identification of Petitioner would be sufficient to support a conviction. Petitioner's objections regarding the sufficiency of the evidence are therefore **OVERRULED**.

///

### B.     Testimony of Detective Stafford

The R&R specifically addresses Stafford's testimony. (R&R at 24:13–26:6.) Plaintiff included only generalized objections to the R&R's recommendation. (Objections at 2:12–17, 2:26–3:7.) This objection primarily speculates that Stafford testified falsely and charges that he and the prosecution rushed to judgment.  Petitioner, apparently referring to a photographic lineup, suggests that none of the witnesses actually identified him as the attacker and that Stafford lied when he said they did. (*Id.* at 3:2–4.)

This objection is unsupported by any reference to the record.  The identifications Petitioner challenged, examined under the standards set forth in *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) were reliable and admissible, and Petitioner offers no evidence or argument other than his own speculation to show they were otherwise.  In addition, evidence was presented at trial regarding the photographic lineup and the manner in which the photographic identifications were made. (R&R at 19:5–17.)  Witnesses identified Petitioner at trial, and there is no indication their identifications were based on earlier photographic identifications. *See Simmons v. United States*, 390 U.S. 377, 384 (1968) ("[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.")

Petitioner's objection regarding Detective Stafford's testimony is therefore **OVERRULED**.

### C.     Procedurally Defaulted Claims

While the Court had held in its order adopting the first report and recommendation that certain claims were technically exhausted, Respondent expressed his intention to show they were procedurally defaulted. In his answer, Respondent specifically mentioned Petitioner's claims that his attorney failed to interview or call certain witnesses and failed to object to a question regarding a previous fight at the restaurant. (Answer at 17:25–18:5.) Respondent argued because Petitioner had failed to mention these claims in either his petition for review or petition for writ of habeas corpus filed with the California Supreme Court, these claims were procedurally defaulted and unreviewable by this Court. (*Id.* at 18:5–19:4.)

1   Petitioner objects to the R&R, not with any argument against the R&R's recommendation, but
2   to express his surprise that the R&R entertained and agreed with this argument; he contends he
3   therefore did not need to address this argument. (Objections at 3:8–18.)

4   Addressing Petitioner's objection, the first report and recommendation issued December 8,
5   2005, which the Court then adopted on January 23, 2006, explained that although these claims were
6   "technically exhausted," Respondent intended to argue these claims were procedural defaulted.
7   (Report and Recommendation issued Dec. 8, 2005, at 8 n.5.) The Court explained it was obligated
8   to consider whether review was precluded under the procedural default doctrine based on his failure
9   to properly raise his claims in the state courts. (*Id.* (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848
10  (1999); *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).)

11  Even if Petitioner were reasonable in believing this issue had previously been decided, he was
12  not free to ignore Respondent's briefing or fail to explain why he believed the R&R's recommendation
13  was wrong. The Court has authority to reconsider its own orders before they become final to correct
14  any mistakes. *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000). Having reviewed the
15  R&R, the Court agrees with its analysis, and determines the three claims at issue were procedurally
16  defaulted because he failed to the California Supreme Court. *Coleman v. Thompson*, 510 U.S. at 735
17  n.1.

18  Furthermore, the R&R considered the question of whether denying review of Petitioner's claim
19  it would not him and concluded it would not. (R&R at 39:2–42:20.) For reasons set forth there, the
20  Court finds even if Petitioner could show his claims were not procedurally defaulted, those claims
21  would not support issuance of the writ.

22  **D.    Request for Appointment of Counsel, Evidentiary Hearing and Oral Argument**
23  The R&R recommended denying Petitioner's request for an evidentiary hearing. Petitioner
24  included in his objections a renewed request for an evidentiary hearing, which the Court construes as
25  his objection to the R&R's recommendation.

26  Petitioner believes, if offered the opportunity to present the testimony of the prosecutor at his
27  trial and of Detective Stafford, he can prove the prosecution knowingly offered Stafford's false
28  testimony and Stafford assisted the prosecution in obtaining a tainted conviction. Petitioner's request

is not based on any evidence he now has, but on speculation that examining Stafford and the prosecutor about the police reports would show the witnesses against him perjured themselves and that prosecutors knew this. (Objections at 2:12–17, 2:25–27.) Thus, although Petitioner characterizes this as a hearing, what he is actually seeking additional discovery. He also requests appointment of counsel to assist him with the hearing, argument, and additional briefing.

"A habeas petitioner does not enjoy the presumptive entitlement to discovery of a traditional civil litigant." *Rich v. Calderon*, 187 F.3d 1064 (9th Cir. 1999) (citing *Bracy v. Gramley*, 520 U.S. 899, 903–05 (1997)). Discovery is available in the discretion of the Court, for good cause shown. *Id.* (citation omitted). "An evidentiary hearing on a claim is required where it is clear from the petition that: (1) the allegations, if established, would entitle the petitioner to relief; and (2) the state court trier of fact has not reliably found the relevant facts." *Id.* (citation omitted). While the first prong of this test is met, Petitioner has not and cannot establish the second. This issue was discussed at length in the R&R (R&R at 22:27–26:6), and as explained there, this issue was thoroughly addressed at trial.

The question of whether habeas relief is appropriate can be resolved without an evidentiary hearing or oral argument. *See Bashor v. Risley*, 730 F.2d 1228, 1233 (9th Cir. 1984) (holding no evidentiary hearing is required where issues can be resolved on the record); Civ. Loc. R. 7.1(d)(1) (assigned judge has discretion whether to hold oral argument). The Court concludes, therefore, no evidentiary hearing or oral argument is necessary.

There is likewise no Constitutional right to appointment of counsel for a federal habeas corpus proceeding. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). It is clear from Petitioner's pleadings he is capable of fairly presenting his claims. The facts and evidence are well-known to Petitioner, and he has shown himself capable of bringing to the Court's attention facts and evidence helpful to his case. The most complex portion of these proceedings relates to procedural default, but even this turns on the question of whether Petitioner presented his claims to the California Supreme Court, and Petitioner is capable of explaining this based on the record, without the assistance of counsel.

The Court therefore concludes denial of appointed counsel would not amount to a denial of due process and the interests of justice do not require it in this case. *See Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986) (holding that appointment of counsel is not required in habeas cases unless

necessary to prevent due process violations, but that the district court may appoint counsel when the interests of justice so require).

### III.     Conclusion and Order

For the reasons set forth above, the Petition is **DENIED**. Petitioner's requests for an evidentiary hearing, oral argument, and appointment of counsel are likewise **DENIED**.

**IT IS SO ORDERED**.

DATED: February 29, 2008

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge